# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:17-cv-260-FDW

| | |
|---|---|
| QUANTEZ EVERETT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| FNU VANDEVELDE, et al., ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** comes before the Court on Defendant Jason Vandevelde's Motion for Summary Judgment, (Doc. No. 20).

## I. BACKGROUND

*Pro se* Plaintiff's Complaint, (Doc. No. 1), passed initial review on a claim against Defendant Vandevelde for the use of excessive force for an incident that occurred at the Marion Correctional Institution. (Doc. No. 8). Defendant Vandevelde has filed a Motion for Summary Judgment that is before the Court for consideration.

**(1)** **Complaint** (Doc. No. 1)

Plaintiff alleges in his unverified Complaint that Officer Vandevelde was escorting Plaintiff back to his cell from the shower on the night of July 21, 2017, when Plaintiff noticed his blanket on the floor outside his cell. Plaintiff tried to kick the blanket into the cell and Vandevelde snatched him with excessive force for no reason and with no warning. Vandevelde then shoved Plaintiff into his cell with such force that Plaintiff stumbled against the table in the cell. Plaintiff approached the door to get his cuffs removed and Vandevelde was overly aggressive by twisting Plaintiff's hand, snatching his hand through the trap, and dropping his weight on it, saying "come

here bitch, give me your arm boy." (Doc. No. 1 at 3). Plaintiff already had pins in his arm from a previous break which made him unable to lift anything heavy, and he noticed swelling in his arm after the incident. Plaintiff seeks damages for pain and suffering.

**(2)** **Defendant's Motion for Summary Judgment** (Doc. No. 20)

Defendant Vandevelde argues that the evidence, including the video recording of the incident, show that no excessive force was used and that he should be granted qualified immunity. Defendant Vandevelde acknowledges two potential instances of force; the use of hands-on force to ensure Plaintiff went to his cell, and Defendant's use of force to remove the handcuff still attached to Plaintiff's arm once he was in his cell. Force was reasonably necessary to get Plaintiff to obey orders and go back into his cell to ensure he did not assault Vandevelde or other staff. The force (yanking and pushing) was reasonable and not excessive, and Plaintiff does not allege he was injured in any way. With regards to the un-cuffing, video of the incident shows that Defendant did not put his weight on Plaintiff's arm, twist his arm, or use any other unnecessary force. Qualified immunity shields Defendant from monetary damages because no constitutional violation has been shown.

**(3)** **Plaintiff's Response**

The Court notified Plaintiff of the standard applicable to a motion for summary judgment and of the importance of responding to Defendant's Motion. (Doc. No. 25). Plaintiff has not filed a response and the time to do so has expired.

**(4)** **Evidence**[1]

    **(A)** **Declaration of Eric J. Wilson** (Doc. No. 22-1)

Wilson was a correctional captain at Marion on the date of the incident. Plaintiff was

---

[1] This section is not exhaustive.

convicted of robbery with a dangerous weapon on July 7, 2010 and was released from prison on or about November 29, 2017. Prior to the incident date, Plaintiff received dozens of disciplinary infractions ranging from disobeying orders to association with gang members and assault with a weapon. He was certified as Security Risk Group III, meaning he was known to be in a gang hierarchy and was a risk to the safety of other inmates and staff. As a result of his extensive infraction record, he was sent to restrictive housing on dozens of occasions. He was in restrictive housing on the incident date.

Wilson investigated the use of force involving Plaintiff on July 21, 2017 by taking witness statements and reviewing video of the incident. The statements of correctional officers reflect that Plaintiff had disobeyed an order from Defendant Vandevelde and attempted to retrieve a blanket on his way back from the shower. Plaintiff was then placed inside his cell and the door was secured. When Defendant Vandevelde attempted to remove Plaintiff's restraints through the trap door, Plaintiff grabbed Vandevelde's arm and pulled it through the trap, scraping Vandevelde's arm against the metal surrounding the trap door. Vandevelde and Officer Patton then secured Plaintiff's arm while Officer Kalinski released the restraints. Video footage of the incident fully corroborates the officers' version of events. Vandevelde was seen by medical and it was confirmed that he had an abrasion on his arm consistent with his version of events. Plaintiff was also seen by medical and it was determined that he did not have any appreciable injury.

Wilson determined that "the minimal use of force was necessary because Inmate Everett disobeyed and continued to disobey orders; he had injured Officer Vandevelde; and he continued to struggle, disobey orders and attempt to harm Officer Vandevelde." (Doc. No. 22-1 at 4). The use of force was consistent with NCDPS policy and procedure and Marion C.I.'s Use of Force

SOP.[2] Wilson found no evidence that Plaintiff was subjected to excessive force by any NCDPS personnel including Officer Vandevelde. The appropriate amount of force was used to obtain a correctional objective.

As a result of his conduct on the Incident Date, Inmate Everett was charged and found guilty of the offenses of Disobeying an Order, Damage State Property and Assault on Staff with a Weapon. (Doc. No. 22-1 at 5).

### B. Declaration of Jason M. Vandevelde (Doc. No. 22-8)

Defendant Vandevelde was a correctional officer at Marion on the date of the incident. His job duties included maintaining the custody and security of the institution, executing the routine day-to-day operations of Marion like facilitating inmate showers, haircuts, and conducting cell searches, ensuring compliance with policy, and other tasks assigned by supervisors.

On July 21, 2017 at approximately 2010 hours, Officers Patton and Vandevelde were conducting showers in upper D-unit, south wing at Marion. While escorting Plaintiff from the shower to his cell, Plaintiff became agitated and argumentative about a blanket that had been seized by another officer as contraband during a cell search while Plaintiff was in the shower. As they approached the cell, Plaintiff remained agitated and as they got to the cell, he tried to reach for the blanket with his toe. Vandevelde stopped him and gave him a direct order to return to his cell. Plaintiff became "verbally combative and jerked away from [Vandevelde] to retrieve the blanket." (Doc. No. 22-8 at 3).

Vandevelde used "minimal hands-on force to prevent an assault by [Plaintiff] and to guide [Plaintiff] into his cell and closed the cell door." (Doc. No. 22-8 at 3). Vandevelde then began removing Plaintiff's restraints through the food port. After getting the handcuffs off Plaintiff's

---

[2] The Court takes judicial notice of the applicable NCDPS Policy & Procedure and Marion C.I. SOP. See Fed. R. Ev. 201.

right hand, Plaintiff "spun around and jerked the handcuff and [Vandevelde's] key through the food port, scraping [Vandevelde's] right forearm and breaking the key in the process." (Doc. No. 22-8 at 3).

Vandevelde did not let go of the restraints and pulled Plaintiff's left arm and the restraints out of the food port. Patton and Vandevelde then used hands-on force to control Plaintiff's arm long enough for Officer Kalinowski to complete removing the restraints. The port was closed and the officers exited the wing without further incident. Vandevelde was later evaluated at medical and they confirmed that he had an abrasion on his forearm where the metal frame of the food port scraped his arm.

At no time did Vandevelde use profane language towards Plaintiff; he remained professional during the entire incident and only used the force he thought was reasonably necessary to attain the correctional objective. Based on his experience, the appropriate amount of force was used to obtain the correctional objective.

## II. LEGAL STANDARDS

### (1) Summary Judgment

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fec. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the

absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted). Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

**(2) <u>Excessive Force</u>**

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment," Helling v. McKinney, 509 U.S. 25, 31 (1993). In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners. See Hudson v. McMillian, 503 U.S. 1, 1 (1992).

A prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, "sufficiently serious," Wilson v. Seiter, 501 U.S. 294, 298 (1991); see also Hudson, 503 U.S. at 5, and must result in the denial of "the minimal civilized measure of life's necessities," Rhodes v. Chapman, 452 U.S. 337, 347 (1981). The second

6

requirement is that a prison official must have a "sufficiently culpable state of mind." Wilson, 501 U.S. at 297, 302-03; Hudson, 503 U.S. at 5, 8. "[T]he use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." Hudson, 503 U.S. 1, 4 (1992); see Wilkins v. Gaddy, 559 U.S. 34, 34 (2010). The "core judicial inquiry," is not whether a certain quantum of injury was sustained, but rather "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 7. "When prison officials maliciously and sadistically use force to cause harm," the Court recognized, "contemporary standards of decency always are violated ... whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." Hudson, 503 U.S. at 9, 13–14.

**(3)** **Qualified Immunity**

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009). The existence of qualified immunity "generally turns on the 'objective reasonableness' of the actions" without regard to the knowledge or subjective intent of the particular official. Am. Civil Libs. Union of Md., Inc. v. Wicomico County, Md., 999 F.2d 780, 784 (4th Cir. 1993) (quoting Anderson v. Creighton, 483 U.S. 635, 639, 641 (1987)) (internal citations omitted).

In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court mandated a two-step sequence for resolving government officials' qualified immunity claims by determining whether: (1) the facts that a plaintiff has alleged or shown make out a violation of a constitutional right; and (2) the right at issue was "clearly established" at the time of defendant's alleged misconduct. While the sequence of the steps set forth in Saucier is "often appropriate," it is not mandatory. Pearson, 555 U.S. at 236. Judges are permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand. Id.

To overcome the qualified immunity defense at the summary judgment stage, the plaintiff must have shown facts that make out a violation of a constitutional right, and the right at issue must have been "clearly established" at the time of the defendant's alleged misconduct. Thompson v. Commonweath of Va., 878 F.3d 89, 97 (4th Cir. 2017) (citing Pearson, 555 U.S. at 232). The analysis takes place against the backdrop of two dueling interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson, 555 U.S. at 231.

### III. DISCUSSION

Plaintiff contends that Defendant Vandevelde used excessive force by snatching him for no reason, shoving him into his cell so forcefully that he stumbled against a table, and snatching and twisting his arm through the food trap and dropping his weight on Plaintiff's arm while removing Plaintiff's restraints.

Defendant Vandevelde has submitted evidence including a video of the incident showing that Plaintiff deviated from the path to his cell to toe something on the floor and that Vandevelde

8

shoved him through open cell door. After the cell door was closed, Vandevelde bent down to uncuff Plaintiff's wrists through the food trap. While this was happening, Vandevelde was jerked suddenly towards trap door then his arm went inside the trap and exited holding Plaintiff's arm, which was held by Vandevelde another officer while Plaintiff was uncuffed. Vandevelde states in his sworn Declaration that his hands on uses of force were pursuant to NCDPS policy, Marion SOP, and that, based on his experience, the appropriate amount of force was used to obtain correctional objectives. He further describes Plaintiff's actions inside the cell, *i.e.*, spinning and jerking his handcuff away from Vandevelde once one arm was free that scraped Vandevelde's arm and broke his key. Defendant has also submitted evidence that the uses of force were minimal and that Plaintiff sustained no injury of note.

Plaintiff has not come forward with any evidence refuting the foregoing. Plaintiff has failed to demonstrate that a genuine dispute of material fact exists with regards to Defendant Vandevelde's alleged use of excessive force. Therefore, summary judgment will be granted in Defendant's favor.

Nor does Plaintiff dispute Defendant Vandevelde's assertion that no constitutional violation occurred and that he should be granted qualified immunity. Summary judgment will also be granted for Defendant Vandevelde on this basis.

## IV. CONCLUSION

Based on the foregoing, Defendant's Motion for Summary Judgment is granted and this case will be closed.

**IT IS, THEREFORE, ORDERED** that:

1. Defendant's Motion for Summary Judgment, (Doc. No. 20), is **GRANTED**.
2. The Clerk of Court is instructed to close this case.

Signed: February 5, 2020

Frank D. Whitney
Chief United States District Judge